[958 NE2d 865, 934 NYS2d 737]

The People of the State of New York, Respondent, v Corey E. Becoats, Appellant.

The People of the State of New York, Respondent, v Jason L. Wright, Appellant.

Argued September 15, 2011; decided October 20, 2011

644

**POINTS OF COUNSEL**

*Easton Thompson Kasperek Shiffrin LLP*, Rochester (*Donald M. Thompson* and *Brian Shiffrin* of counsel), and *Kristin Splain, Conflict Defender*, for appellant in the first above-entitled action. I. The trial court's refusal to grant an adjournment so that Mr. Corey Becoats could secure the presence of a critical witness violated Mr. Becoats's constitutional rights to a fair trial, to present a defense, and to confrontation and constituted an abuse of discretion. (*Matter of Anthony M.*, 63 NY2d 270; *People v Singleton*, 41 NY2d 402; *People v Spears*, 64 NY2d 698; *People v Foy*, 32 NY2d 473; *People v Matz*, 23 NY2d 196; *People v Ballott*, 20 NY2d 600; *People v Snyder*, 297 NY 81; *Chambers v Mississippi*, 410 US 284; *Singleton v Lefkowitz*, 583 F2d 618, *cert denied sub nom. Abrams v Singleton*, 440 US 929; *Washington v Texas*, 388 US 14.) II. The People failed to prove that Mr. Corey Becoats committed the crime of robbery. (*People v Williams*, 84 NY2d 925; *People v Hines*, 97 NY2d 56; *People v Lynch*, 95 NY2d 243; *People v Ficarrota*, 91 NY2d 244; *People v Bleakley*, 69 NY2d 490; *People v Cabey*, 85 NY2d 417; *People v Gray*, 86 NY2d 10; *People v Jennings*, 69 NY2d 103; *Van Vechten v American Eagle Fire Ins. Co.*, 239 NY 303; *People v Wright*, 63 AD3d 1700.) III. It was reversible error to submit to the jury the robbery count charging Mr. Corey Becoats with robbing a gun and/or sneakers from the victim. (*People v Charles*, 61 NY2d 321; *People v Wells*, 7 NY3d 51; *People v Keindl*, 68 NY2d 410; *People v Bauman*, 12 NY3d 152; *People v First Meridian Planning Corp.*, 86 NY2d 608; *Hamling v United States*, 418 US 87; *People v Reed*, 265 AD2d 56; *People v Wright*, 63 AD3d 1700; *Griffin v United States*, 502 US 46; *Yates v United States*, 354 US 298.) IV. The trial court's evidentiary rulings which erroneously permitted improper and prejudicial testimony and impermissibly prohibited the admission of relevant testimony

singularly and cumulatively deprived Mr. Corey Becoats of his due process right to a fair trial as guaranteed by the United States and New York Constitutions. (*People v Johnson*, 93 NY2d 254; *People v Geraci*, 85 NY2d 359; *People v Rivera*, 160 AD2d 267; *People v Leon*, 121 AD2d 1; *People v Pitts*, 218 AD2d 715; *People v Kornegay*, 164 AD2d 868; *Matter of Holtzman v Hellenbrand*, 92 AD2d 405; *People v Johns*, 297 AD2d 645; *People v Melendez*, 55 NY2d 445; *People v James*, 177 AD2d 595.)

*Michael C. Green, District Attorney*, Rochester (*Kelly Christine Wolford* of counsel), for respondent in the first above-entitled action. I. The trial court did not abuse its discretion in denying defendant's request for an adjournment to secure the attendance of a witness. (*People v Foy*, 32 NY2d 473; *Matter of Anthony M.*, 63 NY2d 270; *People v Singleton*, 41 NY2d 402; *Gilmore v United States*, 129 F2d 199; *Stone v Morris*, 546 F2d 730.) II. Defendant's conviction of robbery in the first degree is supported by legally sufficient evidence. (*People v Hawkins*, 11 NY3d 484; *People v Gray*, 86 NY2d 10; *People v Hines*, 97 NY2d 56; *People v James*, 75 NY2d 874; *People v Cochran*, 302 AD2d 276; *People v Danielson*, 9 NY3d 342; *People v Sala*, 95 NY2d 254; *People v Dekle*, 56 NY2d 835; *People v Rooney*, 57 NY2d 822; *People v Charles*, 61 NY2d 321.) III. The question of whether the charge of robbery in the first degree is duplicitous cannot be reviewed by this Court and is otherwise without merit. (*People v Hawkins*, 11 NY3d 484; *People v Patterson*, 39 NY2d 288; *People v Robinson*, 36 NY2d 224; *People v Kelly*, 5 NY3d 116; *People v Gray*, 86 NY2d 10; *People v Kadarko*, 14 NY3d 426; *People v O'Rama*, 78 NY2d 270; *People v Kisoon*, 8 NY3d 129; *People v Starling*, 85 NY2d 509; *People v Klipfel*, 160 NY 371.) IV. Defendant received effective assistance of counsel under both the New York and Federal Constitutions. (*People v Schulz*, 4 NY3d 521; *Strickland v Washington*, 466 US 668; *People v Flores*, 84 NY2d 184; *People v Kroemer*, 204 AD2d 1017; *People v Baldi*, 54 NY2d 137; *People v Satterfield*, 66 NY2d 796; *Rosario v Ercole*, 601 F3d 118; *People v Turner*, 5 NY3d 476; *People v Rivera*, 71 NY2d 705; *People v Grayson*, 266 AD2d 740.) V. Defendant received a fair trial and none of the claimed errors raised before the Appellate Division require reversal. (*People v Wilson*, 195 AD2d 493; *People v Rivera*, 160 AD2d 267; *People v Geraci*, 85 NY2d 359; *People v Corby*, 6 NY3d 231; *People v De Vito*, 56 NY2d 846.) VI. Defendant is not entitled to relief based on his attempt to "join" in the claims raised in the brief of co-defendant Jason Wright. (*People v Teeter*, 47 NY2d 1002; *People v Ford*, 66 NY2d 428.)

*Jonathan I. Edelstein*, New York City, for appellant in the second above-entitled action. I. The evidence against defendant was insufficient to support his conviction of robbery in the first degree. (*People v Schulz*, 4 NY3d 521; *Jackson v Virginia*, 443 US 307; *People v Ficarrota*, 91 NY2d 244; *People v Garland*, 125 AD2d 328; *People v Parker*, 96 AD2d 1063; *People v Montgomery*, 39 AD2d 889; *People v Jennings*, 69 NY2d 103; *People v Ford*, 66 NY2d 428; *People v Cleague*, 22 NY2d 363; *People v Moore*, 291 AD2d 336.) II. The robbery charge was duplicitous. (*People v Patterson*, 39 NY2d 288; *People v Van Dyne*, 12 AD3d 120; *People v Ray*, 71 NY2d 849; *People v Agramonte*, 87 NY2d 765; *People v Brown*, 7 NY3d 880; *People v Martinez*, 81 NY2d 810; *People v Cruz*, 96 NY2d 857; *People v Keindl*, 68 NY2d 410; *People v Bauman*, 12 NY3d 152; *People v Barnes*, 64 AD3d 890.) III. A new trial is required because it is impossible to tell whether the robbery conviction was predicated upon a legal or illegal theory. (*Yates v United States*, 354 US 298; *United States v Joseph*, 542 F3d 13; *People v Martinez*, 83 NY2d 26; *Griffin v United States*, 502 US 46.) IV. Defendant received ineffective assistance of counsel at trial. (*Strickland v Washington*, 466 US 668; *People v Baldi*, 54 NY2d 137; *Kyles v Whitley*, 514 US 419; *People v Lewis*, 2 NY3d 224; *Lockhart v Fretwell*, 506 US 364; *People v Caban*, 5 NY3d 143; *People v Turner*, 5 NY3d 476; *Murray v Carrier*, 477 US 478; *Henry v Poole*, 409 F3d 48; *Rosario v Ercole*, 601 F3d 118.) V. The remaining issues raised before the Appellate Division require reversal. (*Mutual Life Ins. Co. v Hillmon*, 145 US 285; *People v James*, 93 NY2d 620; *People v D'Arton*, 289 AD2d 711; *People v Slaughter*, 189 AD2d 157; *Chambers v Mississippi*, 410 US 284; *People v Rivera*, 160 AD2d 267; *People v Leon*, 121 AD2d 1; *People v Randolph*, 18 AD3d 1013; *People v Schwartzman*, 24 NY2d 241; *People v Arroyave*, 49 NY2d 264.)

*Michael C. Green, District Attorney*, Rochester (*Kelly Christine Wolford* of counsel), for respondent in the second above-entitled action. I. Defendant's conviction of robbery in the first degree is supported by legally sufficient evidence. (*People v Hawkins*, 11 NY3d 484; *People v Gray*, 86 NY2d 10; *People v Hines*, 97 NY2d 56; *People v James*, 75 NY2d 874; *People v Cochran*, 302 AD2d 276; *People v Danielson*, 9 NY3d 342; *People v Sala*, 95 NY2d 254; *People v Dekle*, 56 NY2d 835; *People v Rooney*, 57 NY2d 822; *People v Charles*, 61 NY2d 321.) II. The question of whether the charge of robbery in the first degree is duplicitous cannot be reviewed by this Court and is otherwise without merit. (*People v Hawkins*, 11 NY3d 484; *People v Patterson*, 39 NY2d 288; *People*

*v Robinson,* 36 NY2d 224; *People v Kelly,* 5 NY3d 116; *People v
Gray,* 86 NY2d 10; *People v Kadarko,* 14 NY3d 426; *People v
O'Rama,* 78 NY2d 270; *People v Kisoon,* 8 NY3d 129; *People v
Starling,* 85 NY2d 509; *People v Sanchez,* 84 NY2d 440.) III. Defendant is not entitled to a new trial based on his claim that the
jury could have convicted him on an "illegal theory." (*People v
Baumann & Sons Buses, Inc.,* 6 NY3d 404; *People v Hawkins,*
11 NY3d 484; *People v Dekle,* 56 NY2d 835; *People v Rooney,* 57
NY2d 822; *People v Spann,* 56 NY2d 469; *People v Charles,* 61
NY2d 321; *People v Cash J.Y.,* 60 AD3d 1487.) IV. Defendant
received effective assistance of counsel under both the New
York and Federal Constitutions. (*People v Schulz,* 4 NY3d 521;
*Strickland v Washington,* 466 US 668; *People v Flores,* 84 NY2d
184; *People v Kroemer,* 204 AD2d 1017; *People v Baldi,* 54 NY2d
137; *People v Satterfield,* 66 NY2d 796; *Rosario v Ercole,* 601
F3d 118; *People v Turner,* 5 NY3d 476; *People v Rivera,* 71 NY2d
705; *People v Garcia,* 75 NY2d 973.) V. Defendant received a fair
trial and none of the claimed errors raised before the Appellate
Division require reversal. (*People v Corby,* 6 NY3d 231; *People v
Wilson,* 195 AD2d 493; *People v Rivera,* 160 AD2d 267; *Matter
of Anthony M.,* 63 NY2d 270; *People v Brink,* 57 AD3d 1484;
*People v Doud,* 280 AD2d 955, 96 NY2d 799; *People v Canada,*
28 AD3d 1230; *People v Dawson,* 249 AD2d 977, 93 NY2d 872;
*People v Gissendanner,* 48 NY2d 543; *People v Bassett,* 55 AD3d
1434.)

### OPINION OF THE COURT

SMITH, J.

Defendants, Corey Becoats and Jason Wright, appeal their
convictions for manslaughter and robbery. We reject most of
their arguments, but conclude that Wright is entitled to a new
trial because of an error in excluding evidence he tried to present in his defense.

### I

The People sought to prove that defendants, acting with a
third man, Sherrod Carter (who had not been apprehended at
the time of the trial), beat Hayden Spears to death, and forcibly
stole property from him. Two witnesses described an incident in
which the three attackers first argued with Spears in the street,
and then began to hit him with their fists, a stick or hammer,
and a gun that Wright removed from the victim's pants. Spears
fled down the street, bleeding and staggering, but the three
caught up with him and resumed the beating, Becoats now

using a broken bottle. The fracas moved into a nearby field, where the witnesses lost sight of it. Later, the attackers came back out of the field; Wright was carrying a pair of sneakers. Spears was found near death in the field. He died of blunt force trauma.

The two witnesses who claimed to have seen the attack were Lorraine Small and Nicholas Carter, Sherrod Carter's brother. Both had significant criminal records. There was forensic evidence consistent with the witnesses' accounts of the event, but there was no evidence of the attackers' identity except the eyewitness testimony.

A jury convicted both defendants of second degree (depraved indifference) murder and first degree robbery. The Appellate Division modified by reducing the murder convictions to manslaughter in the second degree, and otherwise affirmed (*People v Wright*, 63 AD3d 1700 [4th Dept 2009]; *People v Becoats*, 71 AD3d 1578 [4th Dept 2010]). A Judge of this Court granted defendants leave to appeal (15 NY3d 811 [2010]; 15 NY3d 802 [2010]). We now affirm as to Becoats, but reverse and order a new trial as to Wright.

## II

The indictment included a single count of robbery in the first degree, asserting that defendants "forcibly stole property, to wit, a gun and/or a pair of sneakers from Hayden Spears" and caused serious physical injury to Spears. Becoats and Wright claim that this count was duplicitous—i.e., that the robbery of the gun and the robbery of the sneakers were separate crimes that should have been charged in separate counts. They did not make this argument in the trial court, however, and we hold that we may not consider it.

The general rule, of course, is that this Court does not consider claims of error not preserved by appropriate objection in the court of first instance (CPL 470.05, 470.35; *People v Patterson*, 39 NY2d 288, 294-295 [1976] [citations omitted]). Defendants seek to bring this case within the narrow exception for so-called "mode of proceedings" errors, but the exception does not apply here.

We said in *Patterson*: "A defendant in a criminal case cannot waive, or even consent to, error that would affect the organization of the court or the mode of proceedings pr[e]scribed by law" (39 NY2d at 295). We added:

"the purpose of this narrow, historical exception is to ensure that criminal trials are conducted in accordance with the mode of procedure mandated by Constitution and statute. Where the procedure adopted by the court below is at a basic variance with the mandate of law, the entire trial is irreparably tainted" (*id.* at 295-296).

Not every procedural misstep in a criminal case is a mode of proceedings error. That term is reserved for the most fundamental flaws. Examples are the shifting of the burden of proof from prosecution to defense (*id.* at 296), and the delegation of the trial judge's function to his or her law secretary (*People v Ahmed*, 66 NY2d 307, 312 [1985]). Mistakenly charging more than one crime in one count of an indictment is not a fundamental error in this sense. A defendant who wants the charges separated must seek that relief at trial.

To allow an unpreserved claim of duplicitousness to be raised on appeal would open the door to abuse. Defendants accused of multiple offenses may not much care how many counts they face, or may prefer to face one count (and thus one conviction) rather than several. Under the rule defendants here seek, it would be possible for them to make that choice at trial by letting a duplicitous indictment stand without objection, and make the opposite choice on appeal; they might thus obtain a new trial on the basis of an error they consciously decided not to challenge because they thought it insignificant, or welcomed it. To expand the definition of "mode of proceedings" error too freely would create many such anomalous results.

We therefore do not consider defendants' argument that the indictment here was duplicitous. We express no opinion about the argument's merit.

### III

Defendants complain of the trial court's refusal to grant an adjournment, on the eve of trial, to allow the defense to obtain the testimony of a witness in federal custody. We hold that the court did not abuse its discretion.

The trial was scheduled to begin on September 12, 2005. On August 23, 20 days before trial, Becoats's counsel received a letter from the prosecutor dated August 19. The letter said that the prosecution had recently learned of, and interviewed, a witness named Michael Bishop, a federal prisoner. Bishop, according to the letter, had told prosecutors on August 17 "that he was present for a portion of the beating of Hayden Spears. He

stated that he observed Sherrod Carter, Nick Carter and Jason Wright take place [sic] in the beating. He also stated that he did not see Corey Becoats when he was present at the scene."

Becoats's counsel was on trial in another case when the prosecutor's letter arrived. He responded on August 29 by asking where Bishop was located, and who his lawyer was. The prosecutor replied on August 31, identifying Bishop's lawyer and the federal prison in Ohio where Bishop was being held.

Becoats's lawyer, according to his submissions below, "immediately contacted" Bishop's lawyer and then "followed up" by making contact with the United States Marshal's office. He was advised, he told the court, "that no guarantee could be made that the prisoner would be produced· in a state court proceeding" and that in any event "the U.S. Marshal's office had to be given at least 30 days notice" if there was to be a "remote possibility" that Bishop would be made available.

The exact date of the conversation between Becoats's lawyer and the Marshal's office is not in the record. The lawyer apparently did nothing as a result of the conversation until September 9—the last business day before the trial—and even then he did not seek an order or begin any other proceeding to obtain Bishop's testimony, either at trial or by deposition. Instead, he filed papers with the trial court describing the sequence of events, asserting that the prosecution had "dragged its feet in providing the information to the defense," and asking for "an adjournment in the proceeding so that [Bishop] can be secured at trial." The adjournment was not granted.

We cannot say that the trial court abused its discretion in denying the adjournment. It is true that the witness's testimony, as described by the prosecutor, seemed very significant, and it is also true that the People could have acted more speedily than they did. It is not clear why, having interviewed Bishop on August 17, the People waited two days and then sent a letter to defense counsel by regular mail. If defense counsel had acted with reasonable diligence after receiving that letter, and had nevertheless been unable to obtain Bishop's testimony in time for trial, it might well have been an abuse of discretion for the court to deny an adjournment (see People v Foy, 32 NY2d 473 [1973]).

The trial court was justified in finding, however, that defense counsel did not act with reasonable diligence. Even assuming that the delay from August 23 to August 29 is excused by

counsel's involvement in another trial, there were almost two weeks between August 31 (when counsel got a response to his August 29 inquiry) and the trial date in which counsel could have sought, and perhaps obtained, an order requiring Bishop's testimony. Counsel chose not to do so, but instead to complain about the People's conduct and ask for an adjournment. It is unclear from the record whether counsel really wanted Bishop's testimony, or simply wanted delay, or was hoping to create an issue for appeal. It was for the trial court to assess whether, under all the circumstances, an adjournment in the hope of obtaining Bishop's testimony was justified, and we see no basis in the record to second-guess the trial court's conclusion.

The dissent acknowledges doubt about whether counsel "did all that he possibly could to obtain Bishop's appearance" (dissenting op at 658-659). Nevertheless, our dissenting colleagues would order a new trial for Becoats, apparently because the possibility that Becoats was deprived of critical, exculpatory testimony seems unacceptable. But that is no more than a possibility on this record. Bishop's account of the facts may have turned out to be much less helpful to Becoats than it seems from the prosecutor's letter; counsel may have had sound strategic reasons for doing no more than he did. On the other hand, if Becoats really has been prejudiced by his counsel's inaction, our holding today does not prevent him from demonstrating that on a motion brought under CPL article 440.

## IV

■ As we mentioned above, the indictment charged defendants with forcibly stealing from Spears a gun "and/or" a pair of sneakers. Defendants argue that the evidence is insufficient as to both items to support a conviction for robbery. They also argue that if the evidence was sufficient as to one item but not the other, a new trial is necessary. We reject both of these arguments.

As to the gun, the Appellate Division agreed with defendants that the evidence was insufficient. The record shows only that defendants took Spears's gun to beat him with and then abandoned it at the scene. This, the Appellate Division held, was insufficient to prove that defendants intended permanently to deprive Spears of possession and use of the gun (see People v Jennings, 69 NY2d 103, 118-121 [1986]). We assume that this aspect of the Appellate Division's decision is correct.

The Appellate Division nevertheless affirmed defendants' robbery convictions, concluding that the evidence was sufficient to

support a finding that they forcibly stole the sneakers. Defendants argue otherwise, saying that there is no proof the sneakers were taken from the victim, Spears. Defendants point out that no witness actually saw the sneakers removed from Spears's feet; the end of the encounter between Spears and his attackers took place in a field out of the witnesses' sight. No witness mentioned what kind of footwear Spears had on that day, and no one specifically said that he lacked shoes when he was found (though an investigator who observed his body at the hospital said there was "a lot of dirt and sand on his feet"). The sneakers that Wright brought out of the field, defendants say, could have come from anywhere.

We think the evidence was sufficient to support the verdict as to the sneakers. When three men beat a fourth man unconscious in a field, and emerge from the field as a group with one of them carrying a pair of sneakers, the inference that the sneakers came from the beating victim is a strong one. It is theoretically possible, of course, that Spears's attackers chanced upon an abandoned pair of sneakers in the field, but a jury could find, beyond a reasonable doubt, that that is not what happened. Defendants now argue, in the alternative, that the evidence fails to show that they used force "for the purpose of" taking Spears's sneakers (*see* Penal Law § 160.00), but that argument was not made below and is not preserved for our review (*see People v Hawkins*, 11 NY3d 484, 492 [2008]).

We also reject defendants' argument that a new trial is required because the robbery verdict might have been based on the taking of the gun. As the United States Supreme Court held in *Griffin v United States* (502 US 46, 56 [1991]), a general verdict need not be set aside merely "because one of the possible bases of conviction was . . . unsupported by sufficient evidence." It is different when a flawed *legal* theory is given to the jury as an alternative basis for decision; if jurors are given the option of convicting on legally inadequate grounds, "there is no reason to think that their own intelligence and expertise will save them from that error" (*id.* at 59). But where jurors are given a choice between a factually supported and factually unsupported theory, it is assumed that they have chosen the one with factual support, "since jurors *are* well equipped to analyze the evidence" (*id.*). We made clear in *People v Martinez* (83 NY2d 26, 36 [1993]) that we accept the distinction between legal and factual inadequacy made in the *Griffin* case.

## V

We come finally to the issue that we conclude requires reversal of Wright's conviction.

■ As we have mentioned, the only evidence linking defendants to the attack on Spears came from two witnesses who said they saw the attack, Lorraine Small and Nicholas Carter. In a deposition given to police about a week after the event, Small told them that she had overheard a conversation in which an attack on Spears was being planned. According to Small, Nicholas Carter took part in the conversation, and Wright was not present. The jury never learned of this conversation; Wright tried to put it in evidence, but the trial court would not let him do so. In this, we conclude, the trial court erred.

According to Small's deposition, she was on her front porch on the day before the crime when she heard a group talking in front of a neighboring house. She said that the group included five people, whom she named: Sherrod Carter, Nicholas Carter and Becoats were among them, but Wright was not. They were talking, according to Small, about "what to do with" Spears. Some said they should beat him. Sherrod Carter said "no I ain't gonna beat him, I'm gonna kill him," adding "I'm gonna murder that motherfucker." At that point, according to Small, "Nick told him to stop talking so loud."

Wright sought at trial to question Small about this conversation, which was helpful to him in two ways—showing both his absence from the planning session and the participation in it by one of the People's key witnesses. The trial court ruled that the statements Small overheard should be excluded on hearsay grounds.

This ruling was mistaken. Wright argues, perhaps correctly, that Sherrod Carter's statement that he was going to kill Spears was within the "statement of present intention" exception to the hearsay rule (*Mutual Life Ins. Co. v Hillmon*, 145 US 285, 294-296 [1892]; *People v James*, 93 NY2d 620, 627-636 [1999]). But Wright did not even need to rely on a hearsay exception, because he was not offering Sherrod's statement, or any other out-of-court declaration, for its truth; Wright had no interest in proving that Sherrod actually intended to kill Spears. Wright wanted only to prove that he was not part of this meeting, and that Nicholas Carter was. His proffer raised no hearsay problem.

The People do not defend the exclusion of the statement on hearsay grounds, but argue that the trial court had discretion to

exclude it because its relevance to Wright's defense was outweighed by its possible prejudice to Becoats. We disagree.

The evidence could have been very valuable to Wright. In a case wholly dependent on the testimony of two eyewitnesses—both of whom had criminal records that might have made the jury doubt their word—proof that one of the two had actually participated in planning the crime might have been decisive. It could have supplied the basis for an argument that Nicholas Carter was one of the criminals, and was falsely accusing Wright to conceal his own involvement. Admittedly, Small's accusation of Wright would remain—but the jury might not have convicted Wright on her word alone.

As for the prejudice to Becoats, there may have been none. As we have said, the testimony may well have been admissible against Becoats under *Hillmon* and *James*. But even if it was not, that does not provide a good enough reason for depriving Becoats's codefendant of important exculpatory evidence. Other means might have been found—perhaps by carefully limiting the scope of the questions and answers—to protect Wright without being unfair to Becoats.

Defendants' remaining arguments lack merit.

Accordingly, in *People v Becoats*, the order of the Appellate Division should be affirmed. In *People v Wright*, the order of the Appellate Division should be reversed, and the case remitted to Supreme Court for a new trial.

Chief Judge LIPPMAN (dissenting in *Becoats*): While I am in agreement with the majority's resolution of the other issues in the case, I do not agree that the denial of defendant Becoats' motion for an adjournment was under the circumstances within the permissible range of the trial court's discretion. Indeed, it appears at the very least highly incongruous to conclude as the majority has, on the one hand, that defendant Wright's convictions must be reversed upon the ground that erroneously excluded, potentially "decisive" evidence, showed that one of the two prosecution witnesses, Nicholas Carter, "had actually participated in planning the crime," (majority op at 656) and, on the other, that the trial court's decision denying defendant Becoats one adjournment to present a witness who would testify that he had actually seen Nicholas Carter, and not Becoats, take part in the crimes, was not also sufficient cause for a new trial.

Both prosecution witnesses had extensive criminal records. Nicholas Carter, in fact, testified in exchange for a very generous

plea offer allowing him to satisfy pending class A-II and B drug felony charges with a probationary sentence. At trial, he recounted that on the evening in question he had been running a bath when his niece informed him that there was a fight going on across the street. He claimed to have watched the fight as it progressed up Joseph Place, and to have seen defendants pull the victim, Spears, into an abutting field, where they were joined by Nicholas Carter's brother, Sherrod Carter. At this point, Nicholas went inside to take his bath. He testified that, when his bath was over, he observed Sherrod, Becoats and Wright coming out of the field. Wright, he said, was holding a pair of boots.

On August 23, 2005, 20 days before the trial was scheduled to begin, defendant Becoats' attorney received a letter from the Monroe County Assistant District Attorney assigned to the case. The Assistant opened his communication by indicating that he was writing, "pursuant to [the prosecutor's] ongoing **Brady** obligation." The letter then advised that the District Attorney's office had learned on August 15, 2005 that a federal inmate named Michael Bishop had information about the Spears case. An interview had been conducted by the District Attorney on August 17, 2005 during which Bishop stated that he had been present during part of the Spears beating and that although he observed Sherrod Carter, *Nick Carter* and Jason Wright beating Spears, he did not see Corey Becoats at the scene.

On August 29, 2005, Becoats' attorney made a letter inquiry of the Assistant District Attorney as to the place of Bishop's incarceration and the identity of his lawyer. The sought information was provided two days later. After speaking with Bishop's attorney, Becoats' counsel asked the United States Marshal's office about the feasibility of transporting Bishop from the federal correctional facility in Youngstown, Ohio where he was incarcerated to Becoats' upcoming Monroe County trial. The Marshal's office was noncommital, indicating that a state court "body order" would be processed in due course and that minimally 30 days notice was required for production of a federal prisoner at a state proceeding.

On September 9, 2005, Becoats' attorney requested an adjournment of the trial so that Bishop could be produced to testify. On September 12, 2005, before any ruling upon defendant's adjournment request had been made, the People disclosed for the first time that they intended to call Nicholas Carter as a witness. Inasmuch, however, as Nicholas Carter had been

implicated in the Spears beating by Bishop, and Bishop's anticipated testimony would not merely be exculpatory as to Becoats but would demonstrate that one of the two prosecution witnesses had a motive falsely to implicate others, counsel for Becoats, now joined by counsel for Wright, renewed his request for an adjournment to permit Bishop's production in court. The trial court nonetheless denied the adjournment, because it was of the view that counsel could have sought a judicial subpoena earlier.

Although our inquiry in judging the propriety of the adjournment denial is limited to determining whether the denial constituted an abuse of discretion—a very tolerant standard that purposefully insulates most judicial decisions respecting the management of a trial from retrospective appellate scrutiny— the range of permissible judicial discretion is generally understood to contract significantly in situations where the adjournment is necessary to the exercise of a fundamental right (see People v Foy, 32 NY2d 473, 476-477 [1973]; People v Spears, 64 NY2d 698, 699-700 [1984]). Fully implicated by defendant Becoats' adjournment request was his fundamental right to present witnesses in his defense (see Chambers v Mississippi, 410 US 284, 302 [1973]) and his closely allied right to compulsory process to secure the attendance of such witnesses. Also implicated was his right to confront a key witness against him— Nicholas Carter. I do not believe that, given the basic protections that were at stake, all of which were essential to the fairness and probity of the impending trial, the court, under the circumstances, had discretion to deny Becoats' adjournment request.

No one disputes that if Bishop had testified in accordance with the account of the crime he gave the Assistant District Attorney on August 17, 2005 he would have provided evidence to the effect that, although he had been present during part of the victim's beating he did not see Becoats and, moreover, that one of the two prosecution witnesses to the relevant events was himself a participant in the beating he claimed to have witnessed from afar. The obvious materiality of this evidence to Becoats' defense is impossible to overstate. Becoats' counsel did not learn about Bishop's version of the incident until relatively shortly before trial and did not know that Nicholas Carter would testify for the prosecution until, literally, the day of the trial's scheduled commencement. It is possible to quibble about whether he did all that he possibly could to obtain Bishop's

appearance for the scheduled trial, but it is clear that a day here or there would not have made a difference and that an adjournment would, in any event, have been necessary to secure Bishop's production from the federal facility in Ohio where he was incarcerated. Undoubtedly, rescheduling the trial would have been inconvenient for the court, but it would not have been more than that—there was no contention a postponement would have precluded the presentation of any testimony or other evidence. Nor was there any reason to suppose that Bishop's attendance could not have been secured within a reasonable time. He was, after all, an identified witness in a federal prison, and there exist established procedures to obtain the attendance of federally incarcerated witnesses in state court proceedings (see CPL 650.30). While those procedures rely for effect upon the voluntary cooperation of federal authorities, there was no reason to suppose that such cooperation would not have been forthcoming.

This was not a situation in which the defendant sought "endlessly [to] pursue an elusive witness" (*Foy*, 32 NY2d at 478), but one in which the defendant requested a single adjournment to secure the attendance at trial of an identified exculpatory witness whose existence and location had been ascertained by the prosecution in the performance of its *Brady* obligations. "[M]ere inconvenience is not sufficient ground for denying an adjournment when to do so would abridge a basic right" (*id.* at 477; *see also Singleton v Lefkowitz*, 583 F2d 618, 623 [2d Cir 1978], *cert denied sub nom. Abrams v Singleton*, 440 US 929 [1979]).* Inasmuch as there was no more compelling ground identified for the denial at issue and that denial undoubtedly abridged basic rights, leaving substantial doubt as to the reliability of the verdict, defendant Becoats should, like his codefendant, be afforded a new trial.

Judges CIPARICK, GRAFFEO, READ and PIGOTT concur with Judge SMITH; Chief Judge LIPPMAN dissents in a separate opinion in which Judge JONES concurs.

In *People v Becoats*: Order affirmed.

---

* This was a federal habeas proceeding in which Singleton prevailed upon the claim, previously rejected by this Court (*People v Singleton*, 41 NY2d 402 [1977]), that the trial court had abused its discretion in denying him a continuance to secure the attendance of a material witness in his defense.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, READ, PIGOTT and JONES concur.

In *People v Wright*: Order reversed, etc.