================================================================
This opinion is uncorrected and subject to revision before
publication in the New York Reports.
----------------------------------------------------------------
No. 206
The People &c.,
          Respondent,
       v.
Terrell Allen,
          Appellant.


          Angie Louie, for appellant.
          Nancy Fitzpatrick Talcott, for respondent.


LIPPMAN, Chief Judge:

        The primary issue presented by this appeal is whether a

duplicity argument based on trial evidence must be preserved for

appeal where the count is not duplicitous on the face of the

indictment.  We hold that such error must be preserved, and find

that none of the other issues raised by defendant warrant

- 1 -

reversal.

On June 22, 2008, shortly before 1:30 a.m., defendant attempted to shoot the victim while he was in the street, but the gun did not fire. Approximately ten minutes later, by the stoop in front of the victim's house, defendant fired two shots, one missing and one hitting the victim in the head and killing him.

The victim's wife witnessed some of the events leading up to the shooting, and on the night of the murder, spoke to police officers about what she saw. She mentioned to Detective Mark Lobel the name of the co-defendant in this case (Welds), who told police that defendant had fired the gun. Three days later, defendant was arrested by police, including Detective Lobel, in New Jersey, after he attempted to avoid arrest by hiding in an attic. Police brought defendant to the 113th precinct in Queens. Detective Lobel conducted a lineup at the station, and the victim's wife identified defendant as the shooter. Ballistics evidence showed that the bullet recovered at the scene and the bullet recovered from the victim's body were fired from the same gun. Defendant and Welds were charged in a single indictment. Welds' case was ultimately severed from defendant's. Welds stood trial first and was convicted by a jury of murder in the second degree. Facing a sentence of up to 15 years to life, Welds agreed to testify against defendant in exchange for a promise of leniency. Welds was sentenced to 7 1/2 years to life.

Defendant was charged with one count of second-degree murder and one count of attempted second-degree murder among other charges. The indictment charged defendant and co-defendant with:

> "murder in the second degree, committed as follows: The defendants, on or about June 22, 2008, in the County of Queens, acting in concert with each other and with the intent to cause the death of Kevin Macklin, caused the death of Kevin Macklin, by luring him off the front steps of his home and shooting him with a loaded firearm."

Defendant, alone, was charged with:

> "attempted murder in the second degree, committed as follows: The defendant, on or about June 22, 2008, in the County of Queens, with the intent to cause the death of Kevin Macklin, attempted to cause the death of Kevin Macklin by discharging a loaded firearm at and in his direction."

Defendant filed a request for a bill of particulars, seeking specification of the substance of each aspect of defendant's conduct encompassed by each charge, the distinctions in conduct between the counts of the indictment, and the exact date, time and location of the alleged crimes charged. Defendant also filed an omnibus motion, which challenged the indictment as multiplicitous, arguing:

> "It appears the Counts 1 and 2 of the indictment charging murder in the second degree (intentional) and attempted murder in the second degree are multiplicitous counts as . . . the defendant is charged [with] attempting to cause the death of Kevin Macklin by discharging a loaded firearm at and in his direction, and . . . the defendant is charged with luring him off the front steps of his home and shooting him with a loaded firearm, causing his death. It appears that these counts encompass either the same

- 3 -

conduct or a single continuing offense and should not
be separate counts in this indictment."

In response, the People stated that the substance of
defendant's conduct was that:

"On June 22, 2008, at approximately 01:35 a.m., in the
vicinity of 112-02 148th Street, the defendant, acting
in concert with co-defendant . . . pointed a pistol at
Kevin Macklin, and attempted to shoot Kevin Macklin,
and thereafter did fire at Kevin Macklin, striking him
in the head, thereby causing his death."

After a <u>Wade</u> hearing, Supreme Court denied defendant's
motion to suppress identification testimony, which had claimed,
inter alia, that the identification was made in a lineup that was
conducted in violation of defendant's right to counsel.  There
was conflicting testimony from defendant and the police officers
as to whether or not defendant had requested the presence of his
attorney at the lineup. The court concluded that "even if
defendant Allen in fact had told detectives prior to the lineup
that he wanted his lawyer, they were under no obligation to
contact or provide counsel at the lineup."

During opening arguments, the People raised both
incidents of defendant attempting to shoot the victim (both the
gun not firing, and the missed shot in front of the house ten
minutes later), applying the term "attempted murder" only to the
earlier one.  Defendant made no objection. During the testimony
of the People's witnesses, the prosecution asked questions about
both incidents. The People presented three eyewitnesses who
testified about the events that occurred that night, ballistics

- 4 -

evidence, and an inculpatory statement made by defendant to one of the witnesses an hour after the shooting. The People also presented evidence of defendant's attempts to avoid apprehension and arrest by the police. During trial, the court refused to allow defendant to introduce the extrinsic evidence, consisting of several police reports of the incident, to impeach the credibility of one of the People's witnesses on the stand. According to the officers who wrote these reports, they were based on secondhand information since neither of the officers had spoken to the witness directly.

In the closing argument, the prosecutor did not clarify which incident formed the basis of the attempted murder count. The court also did not specify which conduct the attempted murder charge was based upon, stating:

> "Under the second count the People are required to prove beyond a reasonable doubt two elements: One, on or about June 22, 2008 in the County of Queens this defendant acting in concert intended to commit the crime of murder in the second degree. I have given you those elements. And two, the defendant engaged in conduct which tended to effect the commission of that crime."

Defendant did not object to the charge.

Defendant was convicted on all counts, and sentenced to 25 years to life for murder, 25 years for attempted murder, 15 years for each of two criminal possession of a weapon counts, and one year for menacing. The attempted murder sentence was imposed consecutively to the other counts.

The Appellate Division unanimously modified the judgment of conviction, as a matter of discretion in the interest of justice, by directing that all the terms of imprisonment run concurrently with each other, and as so modified, affirmed, holding that: (1) although the trial court erred in denying defendant's motion to suppress the lineup identification, the error was harmless; (2) the trial court properly refused to allow defendant to introduce extrinsic evidence on a collateral matter to impeach the credibility of a witness; and (3) the duplicity argument was unpreserved (105 AD3d 754 [2d Dept 2013]).[1]

"An indictment is duplicitous when a single count charges more than one offense" (People v Alonzo, 16 NY3d 267, 269 [2011]). Defendant argues that the count of the indictment charging him with attempted murder was rendered duplicitous due to events that unfolded during the course of the trial.

The indictment in this case appears to cite the incident that occurred in front of victim's house (the two shots fired within seconds of each other) as the basis for the attempted murder count against defendant. The bill of particulars, which says that "defendant pointed a pistol and attempted to shoot . . . and thereafter fired," may be read as tying the attempted murder charge to the earlier incident (the misfire), but it does

_____

[1] The Appellate Division also held that defendant's multiplicity argument was preserved but without merit. Defendant does not pursue the multiplicity claim on appeal to this Court.

- 6 -

not eliminate the ambiguity. At trial, beginning with the opening statement, the People presented to the jury two separate incidents in which a gun was pointed at the victim, and defendant pulled the trigger. Neither the People, in their closing argument, nor the court, in its instructions to the jury, clarified the basis of the attempted murder count. Thus defendant contends that the jury verdict on the attempted murder count could have represented either a finding as to the first incident, the second incident, or a combination of the two.

Defendant argues that preservation is unnecessary where a count is not duplicitous on its face, but where it is the evidence adduced at trial that renders a count duplicitous, contending that the defect constitutes a mode of proceedings error.

In People v Becoats (17 NY3d 643 [2011]), defendant contended that the indictment was facially duplicitous. This Court held that such issues must be preserved at trial. We reasoned:

> "To allow an unpreserved claim of duplicitousness to be raised on appeal would open the door to abuse. Defendants accused of multiple offenses may not much care how many counts they face, or may prefer to face one count (and thus one conviction) rather than several. Under the rule defendants here seek, it would be possible for them to make that choice at trial by letting a duplicitous indictment stand without objection, and make the opposite choice on appeal; they might thus obtain a new trial on the basis of an error they consciously decided not to challenge because they thought it insignificant, or welcomed it. To expand the

- 7 -

definition of 'mode of proceedings' error too freely
would create many such anomalous results."

Becoats (17 NY3d at 651).  Here, defendant asserts that the

charge for attempted murder did not become arguably duplicitous

until the trial evidence suggested that there had been another

incident involving defendant and the victim.

The First and Second Departments have held that where

it is claimed that the trial evidence has rendered a count

duplicitous, the issue must be preserved for review (see People v

Sinha, 84 AD3d 35, 43-44 [1st Dept 2011], affd 19 NY3d 822

[2011]; People v Nash, 77 AD3d 687, 688 [2d Dept 2010]).  The

Fourth Department, however, has held that duplicity created by

trial evidence violates a defendant's right to be tried and

convicted only of the crimes and theories charged in the

indictment, which is a fundamental and non-waivable right, and

that such error also violates a defendant's right under CPL

310.80 to a unanimous verdict, and that preservation is

unnecessary (see People v Montgomery, 104 AD3d 1291 [4th Dept

2013]; People v Filer, 97 AD3d 1095 [4th Dept 2012]; People v

Boykins, 85 AD3d 1554 [4th Dept 2011]).

As we held in People v Alvarez (20 NY3d 75, 81 [2012],

cert denied — US —, 133 S Ct 1736 [2013]), in relation to the

constitutional right to a public trial, "preservation of public

trial claims is still required.  Bringing a public trial

violation to a judge's attention in the first instance will

ensure the timely opportunity to correct such errors" (see also People v Garcia, 95 NY2d 946, 947 [2000]; People v Nieves, 90 NY2d 426, 431 [1997]). Therefore, defendant's argument that he need not preserve an issue that has constitutional significance is unconvincing.[2]

Any uncertainty could have easily been remedied with an objection during opening statements, the witness testimony, or to the jury charge. Requiring preservation will prevent unnecessary surprise after the conduct of a complete trial. Accordingly, we hold that issues of non-facial duplicity, like those of facial duplicity, must be preserved for appellate review. The Fourth Department cases holding otherwise should not be followed.

As to the lineup identification, any error in its admission "must be deemed harmless beyond a reasonable doubt when considered in light of the overwhelming evidence of defendant's guilt" (People v Owens, 74 NY2d 677, 678 [1989]; accord People v Harris, 80 NY2d 796 [1992]. Here, there were three eyewitnesses, two of whom knew the defendant personally, ballistics evidence, a confession to one of the witnesses an hour after the shooting, and defendant's strenuous efforts to avoid arrest.

Finally, we reject defendant's claim that he was improperly limited in establishing through police reports that

---

[2] We note this is not a case where defendant was tried without an indictment at all or on a crime removed from anything for which he was indicted, but rather one in which there is a lack of clarity as to which of two incidents the relevant count of the indictment refers to.

the People's main witness, the victim's wife, described the shooter to the police and that the description matched that of the alleged accomplice in this case. As to limitations on cross-examination of prosecution witnesses, it is well settled that "an accused's right to cross-examine witnesses . . . is not absolute" (People v Corby, 6 NY3d 231, 234-235 [2005]). Because prior statements are "often collateral to the ultimate issue before the jury and bear only upon the credibility of the witness, [their] admissibility is entrusted to the sound discretion of the Trial Judge whose rulings are not subject to review unless there has been an abuse of discretion as a matter of law" (People v Duncan, 46 NY2d 74, 80 [1978], cert denied 442 — US — 910 [1979]). The trial court, acting in accordance with these principles, did not abuse its discretion when it ruled that the police reports were inadmissible extrinsic evidence on a collateral matter. Defendant failed to demonstrate that the source of the information in the reports was actually the victim's wife herself. The officers/authors of the reports wrote that they were based on second-hand information, and neither of them had ever spoken to the victim's wife personally.

Accordingly, the order of the Appellate Division should be affirmed.

* * * * * * * * * * * * * * * * *

Order affirmed. Opinion by Chief Judge Lippman. Judges Graffeo, Read, Smith, Pigott, Rivera and Abdus-Salaam concur.

Decided November 25, 2014

- 10 -