O’Donnell, J.,
concurring in part and dissenting in part.
{¶ 303} Respectfully, I dissent from the decision of the majority to vacate the sentence of death on its finding of insufficient evidence to support a capital specification and to remand this case for a new sentencing where imposition of capital punishment is precluded.
{¶ 304} In my view, the majority opinion is logically inconsistent. It affirms Adams’s conviction for aggravated murder for having purposely caused the death of Gina Tenney while committing rape, kidnapping, aggravated robbery, or aggravated burglary, stating, “As long as the jury unanimously convicts the defendant of aggravated murder, the jurors need not be unanimous as to the predicate offense or offenses the defendant committed.” Majority opinion at ¶ 263. The majority apparently does not require the state to establish each alternative means of committing the offense of aggravated murder by sufficient evidence, because it upholds Adams’s conviction notwithstanding its determination that there is no evidence he committed the aggravated burglary.
{¶ 305} However, in its independent review of the death sentence, it states, without citation to binding authority,
When an appellate court reviews the sufficiency of the evidence * * * in an aggravated-murder case in which more than one predicate offense is alleged but the jury has not made a finding as to which predicate offense was committed, and the appellate court determines that the state proved some but not all of the alleged predicate offenses that could establish the aggravating circumstance, the evidence is, as a matter of law, insufficient to support a death sentence and the death sentence must be vacated.
Majority opinion at paragraph four of the syllabus. The majority then vacates the death sentence based on the state’s failure to prove Adams committed an aggravated burglary, one of the alternative means of establishing the aggravating circumstance in this case.
{¶ 306} The majority never adequately explains why the same analysis it employs in reviewing the determination of guilt is also not employed for a sentencing review. If the evidence of guilt is sufficient to support a finding of guilt of aggravated murder, it is also sufficient to uphold the penalty recommended by the same jury that found guilt, because in order to prove an aggravated murder conviction and the aggravating circumstance necessary to *482 impose the sentence of death in this case, the state is required to prove the same elements beyond a reasonable doubt.
{¶ 307} The majority’s position also runs counter to Griffin v. United States, 502 U.S. 46, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991), and Sochor v. Florida, 504 U.S. 527, 112 S.Ct. 2114, 119 L.Ed.2d 326 (1992), where the court upheld general jury verdicts notwithstanding the state’s failure to prove beyond a reasonable doubt each of the alternative means presented to the jury.
{¶ 308} In Griffin, a federal grand jury indicted Diane Griffin and two others with conspiracy to defraud a federal agency with the objects of impairing the efforts of the Internal Revenue Service (“IRS”) to determine income taxes and impairing the efforts of the Drug Enforcement Administration (“DEA”) to ascertain forfeitable assets. Id. at 47. At trial, the evidence failed to connect Griffin to the conspiracy to impair the efforts of the DEA, but the trial court nonetheless instructed the jury in a manner that permitted it to return a guilty verdict against Griffin “if it found her to have participated in either one of the two objects of the conspiracy” — i.e., impairing the efforts of the IRS or impairing the efforts of the DEA. (Emphasis sic.) Id. at 48. The jury returned a general verdict finding Griffin guilty, and the appellate court upheld the conviction, rejecting the argument that the general verdict could not stand because it left in doubt whether the jury had convicted her of conspiring to defraud the IRS, for which there was sufficient proof, or of conspiring to defraud the DEA, for which there was not. Id.
{¶ 309} The Supreme Court affirmed, explaining,
It was settled law in England before the Declaration of Independence, and in this country long afterwards, that a general jury verdict was valid so long as it was legally supportable on one of the submitted grounds — even though that gave no assurance that a valid ground, rather than an invalid one, was actually the basis for the jury’s action.
Id. at 49. It then articulated the prevailing rule: “ ‘[W]hen a jury returns a guilty verdict on an indictment charging several acts in the conjunctive, * * * the verdict stands if the evidence is sufficient with respect to any one of the acts charged.’ ” Id. at 56-57, quoting Turner v. United States, 396 U.S. 398, 420, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970).
{¶ 310} The court stated that when a jury returns a general verdict on a count of an indictment that alleges alternative means of committing the offense, it is presumed that the jury entered the verdict only on grounds supported by sufficient evidence. Griffin, 502 U.S. at 49-50, 112 S.Ct. 466, 116 L.Ed.2d 371. Noting that “jurors are well equipped to analyze the evidence,” the court declined *483 to negate the verdict “ ‘merely on the chance — remote, it seems to us — that the jury convicted on a ground that was not supported by adequate evidence when there existed alternative grounds for which the evidence was sufficient.’ ” (Emphasis sic.) Id. at 59-60, quoting United States v. Townsend, 924 F.2d 1385, 1414 (7th Cir.1991).
{¶ 311} More directly on point, in Sochor, 504 U.S. 527, 112 S.Ct. 2114, 119 L.Ed.2d 326, the court applied these principles to a capital case where insufficient evidence proved one of the four aggravating circumstances supporting imposition of the death penalty. The jury had found Dennis Sochor guilty of first-degree murder and kidnapping, and in the penalty phase of the proceeding, the trial court charged the jury on four aggravating circumstances — that he had a prior conviction for a violent felony, that he committed murder in the course of committing a felony, that the murder was especially heinous, atrocious, or cruel, and that the murder was committed in a cold, calculated, and premeditated manner. See Sochor v. State, 580 So.2d 595, 603 (Fla.1991), fn. 2. The jury recommended the death penalty without specifying which aggravating circumstances it had found, and the trial court adopted the jury’s recommendation. On appeal, the Supreme Court of Florida determined that the coldness factor had not been proven by the state, but it nonetheless upheld the death sentence, because after removing the coldness factor from consideration, the sentence of death was proportionate to Sochor’s crime. Id. at 603-604.
{¶ 312} On direct review, the United States Supreme Court declined to presume that the jury relied on the coldness factor in finding that the aggravating circumstances outweighed the mitigating circumstances. Relying on Griffin, the court rejected Sochor’s suggestion that the death sentence must be set aside “if the jury was allowed to rely on any of two or more independent grounds, one of which is infirm,” explaining that “it was no violation of due process that a trial court instructed a jury on two different legal theories, one supported by the evidence, the other not,” because a jury “is indeed likely to disregard an option simply unsupported by evidence.” Sochor, 504 U.S. at 538, 112 S.Ct. 2114, 119 L.Ed.2d 326. The fact that the jury had been presented with an aggravating circumstance not supported by sufficient evidence therefore did not violate due process or the Eighth Amendment. (Although the United States Supreme Court found against Sochor on this issue, it vacated the judgment of the Florida Supreme Court on other grounds, i.e., the Florida Supreme Court’s failure to explain or declare its belief that the trial court’s express weighing of the coldness factor which had not been proven by sufficient evidence was harmless beyond a reasonable doubt in that it did not contribute to the sentence obtained. Id. at 540-541.)
*484 {¶ 313} Recent decisions from every federal circuit court of appeals demonstrate that Griffin and Sochor remain binding federal constitutional law. E.g., United States v. Mensah, 737 F.3d 789, 811 (1st Cir.2013); United States v. Desnoyers, 637 F.3d 105, 109 (2d Cir.2011); United States v. Tyler, 732 F.3d 241, 253 (3d Cir.2013); United States v. Robinson, 627 F.3d 941, 956 (4th Cir.2010); United States v. Garza-Robles, 627 F.3d 161, 166 (5th Cir.2010); United States v. Dedman, 527 F.3d 577, 599 (6th Cir.2008); United States v. Barrero, 771 F.3d 973, 976 (7th Cir.2014); United States v. Boyle, 700 F.3d 1138, 1143 (8th Cir.2012); United States v. Hui Hsiung, 778 F.3d 738, 760 (9th Cir.2015), fn. 10; United States v. Schulte, 741 F.3d 1141, 1149 (10th Cir.2014); United States v. Bradley, 644 F.3d 1213, 1250 (11th Cir.2011); United States v. Johnson, 216 F.3d 1162, 1165 (D.C.Cir.2000).
{¶ 314} Further, the weight of authority from our sister supreme courts demonstrates that a general verdict is not subject to reversal when the jury is presented with alternative means supporting a finding of guilt, as long as at least one of those alternative means is supported by sufficient evidence. E.g., Commonwealth v. Knox, 105 A.3d 1194, 1197-1198 (Pa.2014); Batiste v. State, 121 So.3d 808, 840 (Miss.2013); Kaczmar v. State, 104 So.3d 990, 1003 (Fla.2012); State v. Santiago, 305 Conn. 101, 183, 49 A.3d 566 (2012), citing State v. Chapman, 229 Conn. 529, 539, 643 A.2d 1213 (1994); State v. Fortune, 2011 ME 125, 34 A.3d 1115, ¶29; People v. Becoats, 17 N.Y.3d 643, 654, 934 N.Y.S.2d 737, 958 N.E.2d 865 (2011); State v. Berry, 227 W.Va. 221, 230, 707 S.E.2d 831 (2011); State v. Mailman, 148 N.M. 702, 2010-NMSC-036, 242 P.3d 269, ¶ 11; Inyamah v. United States, 956 A.2d 58, 62 (D.C.2008); Norris v. State, 2010 Ark. 174, at 6, 368 S.W.3d 52; Gordon v. State, 121 Nev. 504, 507-508,117 P.3d 214 (2005), citing Rhyne v. State, 118 Nev. 1, 10, 38 P.3d 163 (2002); State v. Manning, 885 So.2d 1044, 1086 (La.2004); People v. Dunaway, 88 P.3d 619, 631 (Colo.2004); People v. Sanchez, 26 Cal.4th 834, 851, 111 Cal.Rptr.2d 129, 29 P.3d 209 (2001); Gonzalez v. State, 8 S.W.3d 640, 641 (Tex.Crim.App.2000); People v. Griffin, 178 Ill.2d 65, 83-84, 227 Ill.Dec. 338, 687 N.E.2d 820 (1997).
{¶ 315} And the holdings of Griffin and Sochor are consistent with Ohio case law. Notably, in State v. Johnson, 46 Ohio St.3d 96, 545 N.E.2d 636 (1989), we accepted “the assumption that, ‘when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive * * * the verdict stands if the evidence is sufficient with respect to any one of the acts charged.’ ” Id. at 104, quoting Turner v. United States, 396 U.S. at 420, 90 S.Ct. 642, 24 L.Ed.2d 610.
{¶ 316} The majority’s attempt to distinguish Johnson and Fortune, 2011 ME 125, 34 A.3d 1115, as multiple-act cases is questionable. Initially, there is no *485 indication that the distinction between alternative-means and multiple-act cases in any way affects the analysis in these circumstances.
{¶ 317} In Johnson, the charge and capital specification were similar to Adams’s — felony murder with the predicate offense of aggravated robbery. See id. at 104-106. Here, Adams could have been found to have committed the aggravating circumstance based on an even greater array of acts as stated in the second verdict form signed by the jury, i.e., “aggravated murder while he was committing, attempting to commit or fleeing immediately after committing or attempting to commit rape, aggravated burglary, aggravated robbery, or kidnapping.”
{¶ 318} In Fortune, the court distinguished cases in which “separate, similarly situated victims or similar incidents such as thefts or drug transactions are the evidence supporting a single charge,” id. at ¶ 31, explaining that in the case before that court, “the attempted murder charged in Count 8 was really one incident of the charged offense, not three incidents with three separate victims,” id. at ¶ 33. Only in this context did the court address Griffin.
{¶ 319} In addition, three of the states listed by the majority as “rejecting” the Griffin analysis appear to have never addressed it in the first instance; and those jurisdictions, at least in part, trace their holdings to federal cases that predated and were later distinguished by Griffin. See State v. Harris, 141 N.J. 525, 562, 662 A.2d 333 (1995), citing Stromberg v. California, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931); Cloman v. State, 574 P.2d 410, 412 (Wyo.1978), citing Yates v. United States, 354 U.S. 298, 312, 77 S.Ct. 1064,1 L.Ed.2d 1356 (1956), and United States v. Natelli, 527 F.2d 311, 325 (2d Cir.1975); and McGregor v. State, 1994 OK CR 71, 885 P.2d 1366, 1376, fn. 19, citing Yates. Thus, it is not clear that New Jersey, Wyoming, and Oklahoma would not follow Griffin, especially given the weight of authority supporting it.
{¶ 320} The majority correctly mentions four jurisdictions that reject the rule from Griffin. Those courts did so, however, on independent state law grounds. E.g., State v. Owens, 180 Wash.2d 90, 95, 323 P.3d 1030 (2014), fn. 2 (rejecting Griffin on the basis that “the right to a unanimous jury verdict in criminal trials in Washington is rooted in article I, section 21 of our state constitution and not the federal constitution”); State v. Jones, 96 Hawai'i 161, 181, 29 P.3d 351 (2001) (rejecting Griffin on the basis that “the due process protection under the Hawaii constitution is not necessarily limited to that provided by the United States Constitution”); State v. Owen, 344 P.3d 956, 2015 WL 1309978, *6 (Kan.2015) (memorandum opinion) (“based upon Kansas precedent applying Kansas law, the Court of Appeals correctly determined that the State was required to present sufficient evidence to support each alternative means on which the jury was instructed”).
*486 {¶ 321} But in contrast to those cases, the majority identifies only a plurality opinion in Ohio supporting its holding. The assertion that “we adopted the rule that each possibility in an alternative means case must be supported by sufficient evidence in State v. Gardner, 118 Ohio St.3d 420, 2008-Ohio-2787, 889 N.E.2d 995, at ¶ 49,” majority opinion at ¶ 290, is a stretch. Gardner was a plurality opinion, and because four justices declined to join it, nothing in that opinion can be characterized as a holding of this court. See Article IV, Section 2(A), Ohio Constitution; Fed. Home Loan Mtge. Corp. v. Schwartzwald, 134 Ohio St.3d 13, 2012-Ohio-5017, 979 N.E.2d 1214, ¶ 29. And, although Gardner’s observation on this point has never been adopted by this court as the law in Ohio, Gardner nonetheless purported to apply the federal Due Process Clause, id. at ¶ 47-50, and that approach cannot stand in light of Griffin, which held that due process does not require all alternative means to be proven by sufficient evidence.
{¶ 322} Nor does the majority rely on the due process protections afforded by Article I, Section 16 of the Ohio Constitution as providing any greater protection than does the United States Constitution in these circumstances. See In re B.C., 141 Ohio St.3d 55, 2014-Ohio-4558, 21 N.E.3d 308, ¶ 17 (“the due-process rights provided by the Fourteenth Amendment and those provided by Article I, Section 16 of the Ohio Constitution are coextensive”); State v. Bode, 144 Ohio St.3d 155, 2015-Ohio-1519, 41 N.E.3d 1156, ¶ 31, 33 (French, J., dissenting) (explaining that the “due course of law” provision in the Ohio Constitution is equivalent to the “due process of law” clause in the Fourteenth Amendment and should be similarly construed absent compelling reasons why Ohio constitutional law should differ from federal law).
{¶ 323} In cases of this distinction where neither a verdict form requesting a specific finding nor an interrogatory was submitted to the jury, we presume, as the Supreme Court directs us to in Griffin and Sochor, that the jury acted rationally, honestly, and intelligently and disregarded any alternative means of committing the capital specification not proven by the evidence. Nothing in this record affirmatively demonstrates that the jury relied on the aggravated burglary allegations to support the capital specification charged in this case — and in his brief to this court, Adams did not challenge the sufficiency of the evidence supporting the aggravating circumstance found by the jury, likely because the jury heard overwhelming and compelling evidence that Adams raped and kidnapped Tenney.
{¶ 324} Accordingly, neither the language of the Eighth Amendment nor principles of due process require this court to negate the jury’s verdict that Adams committed the murder in the course of committing rape, kidnapping, aggravated robbery, or aggravated burglary pursuant to R.C. 2929.04(A)(7). And the aggravating circumstance in this case outweighs the mitigating factors *487 beyond a reasonable doubt. Thus, there is no reason to negate the imposition of the death sentence, and I would affirm the judgment of the court of appeals.
Kennedy, J., concurs in the foregoing opinion.