STATE of Maine

v.

**Michael FOURNIER.**

Supreme Judicial Court of Maine.

Argued May 1, 1992.
Reargued Sept. 10, 1992.
Decided Nov. 30, 1992.

Stephanie Anderson, Dist. Atty., Jane Elizabeth Lee (orally), Asst. Dist. Atty., Portland, for the State.

James P. Boone (orally), Caron & Boone, Saco, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS and RUDMAN, JJ.

ROBERTS, Justice.

Michael Fournier appeals from his convictions entered on a jury verdict in Superior Court (Cumberland County, *Lipez, J.*) on fifteen counts of theft by receiving stolen property and one count of negotiating a worthless instrument. 17–A M.R.S.A. §§ 359 & 708 (1983 & Supp.1991). Because the State impermissibly aggregated the amount of stolen property the defendant received into several separate theft counts, we modify the judgment to reflect a single conviction of theft and a single conviction of negotiating a worthless instrument. As so modified, we remand to the Superior Court for resentencing.

## I.

Between June 1988 and January 1990, Fournier knowingly received from his mother, Muriel Fournier, over $400,000 in stolen money. Mrs. Fournier had stolen the money on over one hundred separate occasions from St. John the Baptist Parish in Brunswick, and on each occasion had given all of the money to the defendant. Mrs. Fournier gave her son the stolen money by cashing a church check and giving the cash directly to him, by depositing the money into her own account and writing him a check, by directly paying expenses that he had previously incurred, or by wiring him money via Western Union.

During this period of time the defendant and his wife, after an expensive wedding and honeymoon in St. Martin, continued to live an ostentatious lifestyle. They bought a camp on a lake, rented and lavishly furnished an elegant home, purchased a new Cadillac, and traveled extensively, including trips to Aruba, Atlantic City, Miami, and Niagara Falls.

In early January 1990, Mrs. Fournier was arrested for the thefts. On January 23, 1990, after her son had learned that he could no longer obtain stolen funds from the church through his mother, he negotiat-

ed a check in the amount of $14,929. Three days after writing the check, it was returned for insufficient funds. Although the defendant promised to cover the check, he never did.

The defendant was subsequently indicted for fifteen counts of aggregated theft by receiving stolen property, 17–A M.R.S.A. § 352(5)(E), and one count of knowingly negotiating a worthless instrument. The fifteen counts of theft by receiving included all one hundred-plus incidents of theft and differed only as to the allegation of the dates during which the criminal conduct allegedly occurred. The defendant moved to consolidate the fifteen counts of theft by receiving into a single count, but the court (*Cole, J.*) denied the motion. The jury found the defendant guilty of all counts and this appeal followed.

## II.

Maine's aggregation statute, 17–A M.R.S.A. § 352(5)(E), states in pertinent part:

> Amounts of value involved in thefts committed pursuant to one scheme or course of conduct ... may be aggregated to charge a single theft of appropriate class or grade.

Because the thefts were unquestionably committed pursuant to one scheme or course of conduct and because the State elected to aggregate the defendant's receipt of the money into a single theft under section 352(5)(E), we must decide whether the State may then redivide that single theft into any number of separate counts arbitrarily based on units of time. We conclude the answer is no.

A fundamental rule in statutory construction is that words must be given their plain and ordinary meaning. *Mullen v. Liberty Mut. Ins. Co.*, 589 A.2d 1275, 1277 (Me.1991). We seek to discern from the plain language the real purpose of the legislation, avoiding results that are absurd, inconsistent, unreasonable, or illogical. *See Bangor Hydro–Elec. Co. v. Board of Envtl. Protection*, 595 A.2d 438, 442 (Me.1991); *State v. Niles*, 585 A.2d 181, 182 (Me.1990). Only if the statutory lan-

guage is ambiguous will we look beyond the words of the statute to its history, the policy behind it, and other extrinsic aids to determine legislative intent. *See Lewiston Raceway, Inc. v. Maine State Harness Racing Comm'n*, 593 A.2d 663, 665 (Me. 1991); *State v. Edward C.*, 531 A.2d 672, 673 (Me.1987).

██ When the Legislature originally enacted the Criminal Code, section 352(5)(E) provided:

> Amounts of value involved in thefts committed pursuant to one scheme or course of conduct, whether from the same person or several persons, may be aggregated in determining the class or grade of crime.

P.L.1975, ch. 499, § 1. This sentence essentially followed verbatim the second sentence of section 223.1(2)(c) of the Model Penal Code. In 1976 prior to the effective date of the Criminal Code, however, the Legislature enacted a series of amendments recommended by the same commission that had proposed the Code. Section 352(5)(E) was amended as follows:

> Amounts of value involved in thefts committed pursuant to one scheme or course of conduct, whether from the same person or several persons, may be aggregated ~~in determining the~~ to charge a single theft of appropriate class or grade ~~of the crime~~.

P.L.1975, ch. 740, § 54 (effective May 1, 1976). We conclude that the amendment made explicit that which had previously been implicit only.[1] Giving the amended section its plain and ordinary meaning leads to the conclusion that the Legislature intended to provide the State with the authority either to charge each instance of theft in a separate count or to charge the entire course of conduct in a single count. Thus the State, having elected to proceed pursuant to section 352(5)(E), may not divide a single count of theft by receiving into fifteen separate counts of theft by receiving.

At least one jurisdiction has departed from the language of the Model Penal Code to permit the result sought by the State in this case. Minnesota's criminal code expressly permits the aggregation of thefts within a six-month period. Minn.Stat.Ann. § 609.52(3)(5) (Supp.1992). If the state elects to proceed under that section, all offenses within the period must be aggregated into a single charge. *State v. Harris*, 277 Minn. 351, 152 N.W.2d 728, 730 (1967).

██ Although we agree with the defendant's contention that the court erred in allowing the fifteen separate counts, we reject his argument that such error requires a new trial. Rather, since the defendant was proven guilty beyond a reasonable doubt of each of the fifteen counts of Class B theft by receiving, the proper remedy is to merge the guilty verdicts into a single conviction of Class B theft by receiving, subjecting the defendant to only one sentence for that conviction. *See State v. Allard*, 557 A.2d 960, 962 (Me.1989).

### III.

██ Fournier also argues that the court erred in denying his motion for acquittal on each of the counts of theft by receiving based on the State's failure to prove that he received the money, *in specie*, that was stolen from the church. Fournier argues that because the dollar bills he received were not the same as the dollar bills stolen from the church, he did not receive stolen property, but simply the proceeds of stolen property. We reject this argument as a "hyper-technical" view of the transactions involved. *Cf. State v. Key*, 118 Ariz. 196, 575 P.2d 826 (1978) (receipt of proceeds of stolen check satisfies the "stolen property" requirement). Given the fungible nature of money, the State satisfied its burden of proving beyond a reasonable doubt the defendant's receipt of stolen money by tracing the path of the money from the church

---

**1.** At least one commentator has stated that the purpose of the original version of section 352(5)(E) was "to aggregate related separate crimes into one single crime and further that it should be charged in one count." Ballou, *Commentaries on the Maine Criminal Code: Property Offenses*, 28 Me.L.Rev. 13, 18 (1976).

account through Mrs. Fournier to the defendant.

## IV.

■ Finally, Fournier argues that there is insufficient evidence in the record to support his conviction of negotiating a worthless instrument beyond a reasonable doubt. Contrary to his assertion, the evidence showed that the defendant wrote a check for $14,929 on January 23, 1990, knowing he would be unable to acquire more money from his mother. The day before negotiating the check, the defendant had a balance in the account of $1,253.06. On the day after, he had a balance of $261.29. Fournier has never honored the check. A trier of fact rationally could find beyond a reasonable doubt that the defendant issued the check knowing it would be dishonored. *See State v. Barry*, 495 A.2d 825, 826 (Me.1985).

## V.

Because of our disposition of the aggregation error, we need not reach the defendant's argument concerning the propriety of the court's imposition of consecutive sentences of probation.

The entry is:

Judgment modified to reflect a single conviction of aggregated theft by receiving and a single conviction of negotiating a worthless instrument, and, as so modified, affirmed.

Remanded to the Superior Court for resentencing on both convictions.

WATHEN, C.J., and GLASSMAN, CLIFFORD and RUDMAN, JJ., concurring.

COLLINS, Justice dissenting.

Because in my view the court construes 17–A M.R.S.A. § 352(5)(E) (1983)[1] too narrowly, I respectfully dissent.

Under our sentencing statutes, theft offenses are classified according to the value of the property stolen. 17–A M.R.S.A. § 362 (1983 & Supp.1991). Section 352(5)(E) of the statute allows the State to aggregate amounts of value involved in related thefts to achieve a higher sentencing classification than if each theft were prosecuted separately. Its purpose is to give the State flexibility in its charging decisions in theft cases to ensure that the degree of the offense charged is "appropriate" and bears a reasonable relationship to the seriousness of the defendant's conduct. *See Model Penal Code & Commentaries* Part II, § 223.1 at 141 (1989).

In construing a statute, our primary focus should be to ascertain the real purpose of the legislation. *State v. Niles*, 585 A.2d 181, 182 (Me.1990). We should avoid results that are "absurd, inconsistent, unreasonable or illogical if the language is fairly susceptible to such construction," *Id.*, and we should adopt "the sense of the words which best harmonizes with the context and promotes in the fullest manner the policy and objects of the legislature." *Davis v. State*, 306 A.2d 127, 130 (Me.1973).

Under the court's construction of § 352(5)(E), if the State chooses to aggregate under § 352(5)(E), *all* amounts of value involved in the individual thefts pursuant to one scheme or course of conduct must be aggregated in one single count or not aggregated at all. This construction is perhaps the result of the court's mischaracterization of the State's charging decision in this case. Rather than redividing a single theft into a number of separate counts arbitrarily based on units of time as stated by the court, the State merely chose to use § 352(5)(E) to aggregate the underlying amounts into 15 Class B counts that reasonably relate to the seriousness of Fournier's conduct.

1. 17–A M.R.S.A. § 352(5)(E) (1983) provides:
   Amounts of value involved in thefts committed pursuant to one scheme or course of conduct, whether from the same person or several persons, may be aggregated to charge a single theft of appropriate class or grade. Subject to the requirement that the conduct of the defense shall not be prejudiced by lack of fair notice or by surprise, the court may at any time order that a single aggregated count be considered as separate thefts. No aggregated count of theft shall be deemed duplicitous because of such order and no election shall be required. Prosecution may be brought in any venue in which one of the thefts which have been aggregated was committed.

A plain reading of the statute does not reveal the "all or nothing" requirement enunciated by the court. Moreover, the court's "all or nothing" construction of the section plainly contradicts the legislative goal by reducing the State's flexibility in charging decisions. It is not reasonable to believe that in enacting 17–A M.R.S.A. § 352(5)(E), the Legislature intended that a person who steals in excess of $500,000 by over 100 separate takings is subject to no greater maximum penalty than is one who steals $5,001 on one occasion. *See Commonwealth v. Murray*, 401 Mass. 771, 519 N.E.2d 1293, 1296 (1988) (discussing Massachusetts larceny statute). The court's construction of § 352(5)(E) requires the State to choose between charging Fournier with up to 180 separate counts, or one single count of aggregated theft. Charging by separate counts would create an unnecessarily complex and lengthy trial. Charging only a single count, on the other hand, would not adequately reflect the seriousness of Fournier's conduct. The statute does not expressly prohibit more than one aggregation of theft offenses and I would not construe it to create such an implicit prohibition.

Construing the statute to allow more than one aggregation would not mean that the discretion of the State to aggregate under § 352(5)(E) is unfettered and may be exercised in an arbitrary or capricious manner. *See State v. Heald*, 382 A.2d 290, 301 (Me.1978) (*reasonable* prosecutorial discretion in the enforcement of criminal laws is inherent in our criminal justice system); *State v. Pickering*, 462 A.2d 1151, 1161 (Me.1983) (prosecutorial discretion is subject to constitutional constraints); M.Bar R. 3.7(i)(1) (public prosecutor shall not institute or cause to be instituted criminal charges when the lawyer knows, or it is obvious, that the charges are not supported by probable cause). *See also District of Columbia v. Dixon*, 230 A.2d 481, 482 (D.C.1967) (prosecutor has a right to decide whether to prosecute a case except when that right is exercised "in a scandalous or corrupt manner, or [its exercise is] shown to be 'capricious and vexatiously repetitious' "). Rather, the aggregation must be appropriate and bear a reasonable relationship to the seriousness of the conduct of the defendant. Such is the case here. Fournier perpetrated approximately 180 separate acts of theft involving more than $500,000. He pressured his mother, who was in a position of trust with St. John's Parish having access to Parish funds, to steal over $500,000 for his benefit. Fournier's acts of theft were rationally aggregated into 15 separate counts of aggravated theft by receiving (each a Class B offense). The 15 separate aggregated counts each represented distinct amounts stolen during separate periods of criminal conduct during the time period between June 1988, when Fournier's criminal conduct began, and January 1990, when it ended. The counts, as aggregated by the State, resulted in charges appropriately reflecting the seriousness of Fournier's conduct.

Under the court's reading of § 352(5)(E), however, the maximum prison sentence which can be imposed on remand in light of Fournier's single Class B conviction, is 10 years of imprisonment. *See* 17–A M.R.S.A. § 1252(2)(B) (1983). The maximum permissible term of probation is 4 years.[2] *See* 17–A M.R.S.A. § 1202(1) (1983 & Supp. 1991–92). The court reaches this conclusion despite the fact that without the aid of the aggregation provision, the State had the option of charging Fournier with 12 Class B theft offenses, eighty-three Class C offenses and numerous Class D and E offenses. A more "absurd, inconsistent, unreasonable [and] illogical" result is hard to envision. *See Niles*, 585 A.2d at 182.

Moreover, as a special condition of probation Fournier was sentenced to pay restitution in the amount of $200 a month or 10% of his gross salary. At this rate, it would take Fournier in excess of 208 years to repay the $500,000 that he stole. It is obviously unlikely that the Church will ever recover from Fournier all of the money stolen. Making matters worse, under the

---

**2.** In addition, a Class B offense carries a maximum fine of $20,000. *See* 17–A M.R.S.A. § 1301 (1989 & Supp.1991).

court's reading of § 352(5)(E), the maximum term of probation which could be imposed on Fournier is four years. *See* 17–A M.R.S.A. § 1202(1) (1983 & Supp.1991–92). If, however, the statute were read to give effect to the Legislature's purpose of ensuring the prosecution flexibility in its charging decisions, consecutive sentences of probation could be imposed. *See* 17–A M.R.S.A. §§ 1152(2)(D) & 1256(2) (1983 & Supp.1991–92). As a result, the trial court would have the option of sentencing Fournier to a longer period of probation conditioned on restitution.[3] *See* M.R.S.A. § 1204(2–A)(B) (1983). Such a sentence would bear a reasonable relationship to the seriousness of Fournier's crimes while encouraging Fournier to make his restitution payments in a timely manner, thus giving effect to the purpose of the Legislature.

I would affirm the convictions in all respects.

---

**3.** Common sense leads me to believe, and clinical research appears to confirm that probationers pay their restitution obligations more diligently when under the threat of probation revo- cation. *See* Van Voorhis, *Restitution Outcome & Probationer's Assessments of Restitution: The Effects of Moral Development,* 12 Crim.Just. & Behav. 259 (Sept.1985).