2011 ME 125

**STATE of Maine**

v.

**Daniel L. FORTUNE.**

Supreme Judicial Court of Maine.

Argued: Oct. 14, 2011.
Decided: Dec. 13, 2011.

Arnold S. Clark, Esq. (orally), Ferris, Gurney & Crook, Waterville, for appellant Daniel Fortune.

Evert Fowle, District Attorney, and Alan P. Kelley, Dep. Dist. Atty. (orally), Prosecutorial District IV, Augusta, for appellee State of Maine.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

ALEXANDER, J.

[¶ 1] Daniel L. Fortune appeals from a judgment of conviction of aggravated attempted murder (Class A), 17–A M.R.S. § 152–A(1)(A) (2010) (premeditation-in-fact) (two counts); aggravated attempted murder (Class A), 17–A M.R.S. § 152–A(1)(D) (2010) (extreme cruelty) (two counts); attempted murder (Class A), 17–A M.R.S. §§ 152(1)(A), 201 (2010); elevated aggravated assault (Class A), 17–A M.R.S. § 208–B(1)(A) (2010) (two counts); robbery (Class A), 17–A M.R.S. § 651(1)(D) (2010); burglary (Class B), 17–A M.R.S. § 401(1)(B)(4) (2010); conspiracy to commit robbery (Class B), 17–A M.R.S. § 151(1)(B), 651(1)(D) (2010); and violation of condition of release (Class C), 15 M.R.S.

§ 1092(1)(B) (2010), entered in the Superior Court (Somerset County, *Murphy, J.*) following a jury trial. Fortune had pleaded guilty to three other counts of the indictment prior to trial: theft (Class B), 17–A M.R.S. § 353(1)(B)(1) (2010); failure to appear (Class C), 15 M.R.S. § 1091(1)(B) (2010); and violation of condition of release (Class E), 15 M.R.S. § 1092(1)(A) (2010).

[¶ 2] Fortune argues on appeal that (1) the evidence was insufficient to support a finding of "premeditation-in-fact" as an element for conviction of the two counts of aggravated attempted murder, 17–A M.R.S. § 152–A(1)(A); (2) the evidence was insufficient to support a finding of "extreme cruelty" as an element for conviction of the two counts of aggravated attempted murder, 17–A M.R.S. § 152–A(1)(D); (3) the evidence was insufficient to support the separate conviction of one count of attempted murder as to three individuals who were not harmed; (4) the court erred when it instructed the jury that it could find Fortune guilty of attempted murder if the jury found that the State had proved attempted murder as to only one of the three victims named in the single count of the indictment; (5) his sentence of life imprisonment is not proportional to the offense of aggravated attempted murder in violation of article I, section 9 of the Maine Constitution; (6) the sentencing court erred in imposing concurrent sentences of imprisonment for life on two counts of aggravated attempted murder; and (7) the sentencing court erred in failing to clearly articulate on the record the three-step sentencing analysis, 17–A M.R.S. § 1252–C (2010), in determining the sentences imposed on each of the remaining nine felony counts of which he was found, or to which he had pleaded, guilty. We affirm the convictions and the resulting sentences.

## I. CASE HISTORY

[¶ 3] Viewing the evidence in the light most favorable to the State, the jury rationally could have found the following facts beyond a reasonable doubt. *See State v. Townsend,* 2009 ME 106, ¶ 2, 982 A.2d 345.

[¶ 4] The victims in this case were five members of one family—a father, a mother, their ten-year-old daughter, their teenage daughter, and a teenage son.[1] The teenage son, a high school senior at the time of these events, had been friends with Daniel Fortune. Fortune knew all of the victims and had spent a significant amount of time as a guest in the victims' home before he graduated from high school the year before.

[¶ 5] Fortune, twenty years old at the time of these events, lived with his foster brother, Leo Hylton. Hylton owned a collection of unusual knives, including a machete. The teenage son knew Hylton from high school, but the other victims had little or no knowledge of Hylton.

[¶ 6] In November 2007, Fortune attended a party at the victims' home during which he stole the father's safe containing more than $180,000 in cash and valuables. The father subsequently went to Fortune's home, Hylton allowed him to look around, and the father found the stolen safe in Fortune's closet. After the theft of the safe, the father had a whole-house security alarm system installed at his home, and he purchased a handgun with a laser sight that he kept in his bedroom closet.

[¶ 7] Fortune was charged with theft and was aware that the father would be a witness at his theft trial. Fortune was released on bail pending his theft trial. He failed to appear for trial, and a warrant was issued for his arrest.

1. An elder son was living elsewhere during the crimes in this case.

[¶ 8] In the early morning hours of May 27, 2008, Fortune and Hylton stole Hylton's aunt's car and drove to the victims' home, bringing changes of clothing and gloves with them. The evidence indicates that Fortune carried with him a long-blade foldable knife, and Hylton carried a machete. Fortune and Hylton first tried to enter the lower level of the victims' home from the backyard through the glass-paned rear doors. The teenage son was sleeping in the lower level with a large-screen television on at the time Fortune and Hylton tried to enter, and it is possible that Fortune and Hylton observed him sleeping in the lower level room. Finding those doors locked, Fortune and Hylton went around the house and entered the home's kitchen through the garage.

[¶ 9] As soon as Hylton and Fortune opened the kitchen door, the home's security system activated, emitting a loud siren and verbally warning intruders that police were being called. The father, asleep in the first-floor master bedroom with the mother, woke up and, thinking the alarm had gone off accidentally, walked down the hall toward the dining area and kitchen. The father saw a man standing at the far end of the dining room table. The evidence indicates that this man was Hylton. While telling Hylton to leave, the father was suddenly struck extremely hard on the left side of his head and fell to the ground. The evidence supports a finding that the father was hit by the second intruder, Fortune.

[¶ 10] The father got up and, with a badly bleeding head wound, ran back and retrieved his gun from the master bedroom. He returned to the hall where he could see Hylton still standing and pointed the gun and laser sight at him, but Hylton did not flee. The father pulled the trigger on his gun, but it would not fire. Hylton then struck the father repeatedly with the machete.

[¶ 11] At this time, the ten-year-old daughter came out of her upstairs bedroom and looked over the railing to the first floor. Her father yelled at her to get back into her room. The girl saw a person come up the stairs toward her; that man, Hylton, "scaled the stairs as fast as [he] could" and struck at the younger daughter, who was "cowering against the wall," at least four or five times as her father watched from below. Hylton later stated that the younger daughter was a witness and that he kept swinging at her even after she "[went] down" because he had to make sure there were no witnesses. The father tried to get to her, but Fortune was fighting him, "hitting" and "hacking" him, and knocking him down as the father slipped in his own blood. The father lost consciousness.

[¶ 12] As this was happening, the mother could hear horrible screaming. She tried the phone, but it was dead. She shut and locked the master bedroom door, ran into the bathroom and locked the door, pushed out the window screen, dropped to the ground, and started running. After she left the house, the mother heard someone kick in the bathroom door, so she ran through the woods to a neighboring house where the police were called. The older daughter, who had been sleeping in a bedroom in the lower level of the house, hid under her bed, eventually got her cell phone, and also called the police. The teenage son, who had been sleeping on the sofa in the game room in the main part of the lower level, started to go upstairs, but when the basement door slammed shut, he instead ran out the lower level doors and hid in the backyard.

[¶ 13] After savagely assaulting the younger daughter, Hylton walked around to "make sure the house was clear." He kicked the locked doors open in the master bedroom suite and pulled the shower cur-

tain aside looking for witnesses. Fortune also checked out the house after the father was attacked. Fortune then led Hylton down to the lower level, where the two exited through the rear doors. Although the teenage daughter did not see anyone try to enter her room, Hylton told police that, before exiting the home, he "checked that room," likely referring to the room where the teenage daughter was hiding.

[¶ 14] The first officer arrived at the scene at 2:11 a.m. and found the father lying in the first floor hallway. The ten-year-old daughter was found lying in her bed. The father and ten-year-old daughter each had received severe wounds. Officers initially believed the younger daughter to be dead. The father and his younger daughter suffer devastating and disfiguring life-long injuries.

[¶ 15] Hylton was arrested on May 29, 2008, and began cooperating with the police. A video of Hylton confessing to and recreating the crimes at the scene was admitted for substantive purposes at Fortune's trial by agreement of the parties. Hylton pleaded guilty to several charges, including attempted murder.

[¶ 16] Fortune was originally charged in Kennebec County in an eight-count indictment. A superseding indictment was filed containing fourteen counts. Subsequent to the superseding indictment, venue was changed to Somerset County. Two days before the jury trial began, Fortune pleaded guilty to the first three counts of the indictment arising from his earlier theft of the safe: theft, failure to appear for trial, and violation of a condition of release.

[¶ 17] Fortune's seven-day jury trial was held in May 2010 on the remaining counts of the superseding indictment. The jury, filing a jury verdict form, found Fortune guilty on all eleven counts. Fortune affirmatively elected not to poll the jury after the verdict was read.

[¶ 18] The court held a sentencing hearing in June 2010. Fortune was sentenced to two terms of life imprisonment, to be served concurrently, for the aggravated attempted murders committed upon the father and the ten-year-old daughter. He was sentenced to a concurrent term of thirty years for the single attempted murder charge involving the other three victims, and was sentenced to varying terms of years, to be served concurrently with the life sentences, for the remaining felony charges, as well as six months, to be served concurrently, for the sole misdemeanor charge.

[¶ 19] Fortune appealed from the convictions and the sentences. Pursuant to M.R.App. P. 20, the Sentence Review Panel granted Fortune leave to appeal from his sentences.

## II. LEGAL ANALYSIS

### A. Jury Instruction on the Attempted Murder Count

[¶ 20] We begin our review with the issue that requires the most discussion: whether the trial court erred when it instructed the jury that it could find Fortune guilty of attempted murder if the jury found that the State had proved attempted murder as to one of the three victims named in the single count of the indictment.

[¶ 21] Fortune was charged in a single count of the superseding indictment (Count 8) with the attempted murder of three victims: the mother, the teenage son, and the teenage daughter. At trial, the court originally instructed the jury, with respect to Count 8, that "this is conduct that is alleged to have occurred against [the mother], [the teenage son], and [the teenage daughter]." Additionally, the jury received a jury verdict form that

repeated the language of the indictment verbatim.

[¶ 22] After the jury began its deliberations, it sent a note to the court asking whether Count 8, the attempted murder count as to the mother and the two teenage children, had "to apply to all or is action against one person sufficient?" The court instructed the jury that:

> if the State proves beyond a reasonable doubt the charge of attempted murder against one of the people named in that count, that would be sufficient so long as all of the elements of attempted murder have been proven beyond a reasonable doubt by the State in this case.

[¶ 23] Fortune objected to this instruction on the grounds that the indictment alleged attempted murder as to all three named victims and that the jury should be instructed that the State was required to prove attempted murder as to each named victim. The jury returned a verdict of guilty as to the attempted murder charge in Count 8 on the jury verdict form. The form did not require the jurors to state that they were unanimous as to the identity of the victim or victims of the attempted murder.[2]

[¶ 24] Fortune argues on appeal that the court's second instruction to the jury concerning the attempted murder charge was error because (1) the indictment required the State to prove attempted murder as to all three victims, the mother, the teenage son, and the teenage daughter, (2) the instruction was prejudicial to him, and (3) the instruction violated his constitutional right under the Maine Constitution, article I, section 7, to unanimity in the verdict by creating the potential for jurors to agree unanimously that he was guilty of attempted murder, but fail to agree unanimously as to which one or more of the three individuals named in the indictment was the victim of that crime.

[¶ 25] We review jury instructions "as a whole, taking into consideration the total effect created by all the instructions and the potential for juror misunderstanding." *State v. Saucier*, 2001 ME 107, ¶ 23, 776 A.2d 621; *accord State v. Gauthier*, 2007 ME 156, ¶ 14, 939 A.2d 77. Any errors "in criminal cases that affect constitutional rights are reviewed to determine that we are satisfied, beyond a reasonable doubt, that the error did not affect substantial rights or contribute to the verdict." *Gauthier*, 2007 ME 156, ¶ 14, 939 A.2d 77.

[¶ 26] Courts regularly encounter indictments that may aggregate, in one count of the indictment, several identical crimes committed against one or more victims. Such charging practices are encountered most frequently when there are allegations of multiple drug transactions, multiple sex acts committed against a minor child, or multiple thefts and aggregation of the theft values enhances the seriousness of the charge. *See State v. Fournier*, 617 A.2d 998, 999–1000 (Me. 1992) (addressing aggregating theft charges pursuant to Maine's aggregation statute).

[¶ 27] When a defendant believes that he or she is prejudiced by the consolidation of several identical crimes into a single count of an indictment, the defendant may move for relief from prejudicial joinder, *see* M.R.Crim. P. 8(d), though most defendants might be loath to convert one count to several counts charging an identical crime, with the consequent consecutive sentencing possibilities. *See Fournier*, 617 A.2d at 999–1000 (holding that the court erred when it denied the defendant's motion to consolidate fifteen

---

**2.** As part of its original instructions, however, the court instructed the jury that its verdict must be unanimous in order to find Fortune guilty of any charge.

counts involving over one hundred thefts into a single count). In any event, there is no indication that before or during trial in this case, there was a motion to separate Count 8 into three separate charges. Nor was there any effort to have the jury return a separate determination as to each victim on the verdict form.

[¶ 28] In effect, what the jury was asked to do regarding Count 8 was to return a general verdict regarding the charge of attempted murder as to any of the three named victims. The continuing validity of general verdicts was recognized in the United States Supreme Court's holding in *Griffin v. United States,* 502 U.S. 46, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991). There the Court approved, pursuant to the Due Process clause, an instruction permitting a general verdict of guilty on a conspiracy count when one object of the conspiracy charge was supported by the evidence, while the evidence did not connect the defendant to an alternative object of the conspiracy. *Id.* at 49–50, 56–57, 112 S.Ct. 466. In reaching its conclusion, the Court noted a common law rule that validated general verdicts on multicount indictments, even when some of the counts were legally defective. *Id.* at 49–51, 112 S.Ct. 466. The Supreme Court's citations for this rule included *State v. Burke,* 38 Me. 574, 575–76 (1854).

[¶ 29] *Griffin* may have been qualified by *Black v. United States,* 561 U.S. ——, 130 S.Ct. 2963, 177 L.Ed.2d 695 (2010), in which the Court recognized the practice favoring general verdicts, but vacated a conviction that could have been based on either of two alternative theories of law because an instruction, to which the defendants had properly objected, was improper on one of the alternatives. *Id.* at ——, 130 S.Ct. at 2966, 2968–69, 2970; *see also Skilling v. United States,* 561 U.S. ——, 130 S.Ct. 2896, 2934, 177 L.Ed.2d 619 (2010) (decided the same day as *Black* and

holding that, although constitutional error occurs when a jury is instructed on alternative theories of guilt and a conviction is obtained that could rest upon a legally invalid theory, the conviction need not necessarily be vacated, subject to a harmless error analysis). Thus under *Black* a general verdict may not be appropriate when one alternative charge may be defective as a matter of law, but a general verdict may continue to be appropriate, under *Griffin,* when the only question is whether one alternative charge can be proven as a question of fact. *See Griffin,* 502 U.S. at 59, 112 S.Ct. 466.

[¶ 30] Fortune's proposed instruction that would have required the jury to find, beyond a reasonable doubt, that the elements of attempted murder were proved as to all three named victims in order to return a guilty verdict on Count 8 was not in accord with the law in Maine or the more generous general verdict jurisprudence articulated by the Supreme Court in *Griffin.* Instead, Fortune could have proposed, but did not, that the jury be instructed that, to support a conviction, the jury was required to be unanimous that the elements of attempted murder were proven as to at least one named victim.

[¶ 31] When separate, similarly situated victims or similar incidents such as thefts or drug transactions are the evidence supporting a single charge, the jury must unanimously find that one specific incident occurred or that the elements of the crime are proven as to at least one victim in order to convict. *See Commonwealth v. Conefrey,* 420 Mass. 508, 650 N.E.2d 1268, 1270–72, 1273 n. 11 (1995) (reversing a conviction when the court denied the defense's request for a specific instruction on unanimity, and alternate incidents could have supported the conviction). On request, the jury should be instructed on this point, if the

evidence offered in support of one charge includes more than one incident of the charged offense. *See Maine Jury Instruction Manual* § 6–65 at 6–103 (4th ed. 2011).

[¶ 32]  Here, the trial court would have erred had it adopted the all-three-or-nothing instruction advocated by Fortune. In the context of this case, it may have been better practice, though not necessarily in Fortune's interest, had the State brought a separate count of attempted murder regarding each of the three named victims. However, we cannot say that it was error, let alone obvious error, for the trial court to present the verdict form and instruct as it did.

[¶ 33]  The evidence readily establishes that Fortune and Hylton went to the residence with the specific intent to murder the father as the witness to the theft and to murder anyone else present to eliminate them as witnesses, and that Fortune and Hylton took a substantial step toward commission of those murders by the brutal attacks on the father and daughter and the aggressive search of the home attempting to find anyone else who might be present. In the circumstances, the court could have reasonably concluded that the attempted murder charged in Count 8 was really one incident of the charged offense, not three incidents with three separate victims. Taking that view, the trial court's instruction was not error.

■ [¶ 34]  The evidence was sufficient to find each element of attempted murder as charged in Count 8. *See* 17–A M.R.S. § 152(1)(A); *see also State v. Leone,* 581 A.2d 394, 399 (Me.1990) (interpreting the meaning of taking a "substantial step" in the commission of murder in affirming a guilty verdict for attempted murder).

B.  Remaining Issues on Appeal

[¶ 35]  Fortune's remaining issues on appeal require only brief discussion.

1.  Sufficiency of the Evidence to Support Finding of Aggravated Factors in Aggravated Attempted Murder

■ [¶ 36]  First, contrary to Fortune's contention, the evidence was sufficient for the jury to find, beyond a reasonable doubt, the presence of both "premeditation-in-fact" and "extreme cruelty," which are alternative elements of aggravated attempted murder, at the time that Fortune, acting as a principal or as Hylton's accomplice, committed attempted murder. *See* 17–A M.R.S. § 152–A(1)(A), (D). The evidence was more than sufficient for the jury to conclude that the attempted murders of the father and of his ten-year-old daughter were planned and deliberate, *see State v. Cookson,* 2003 ME 136, ¶ 40, 837 A.2d 101 (stating that "premeditation-in-fact" means a "planned, deliberate killing"), and that, based on all of the circumstances, the attempted murders of these two victims were, in fact, perpetrated with extreme cruelty, *see State v. Wilson,* 669 A.2d 766, 769 (Me.1996) (holding in a murder case that "the cumulative horror of the circumstances surrounding" the crime supported a finding of "extreme cruelty").

[¶ 37]  Accordingly, the evidence was sufficient to support Fortune's convictions of the aggravated attempted murders of the father and his ten-year-old daughter. *See State v. Severy,* 2010 ME 126, ¶ 8, 8 A.3d 715; *State v. Medeiros,* 2010 ME 47, ¶¶ 16–17, 997 A.2d 95 (stating that the fact-finder is permitted to draw all reasonable inferences from the evidence and that a criminal conviction may be based solely on circumstantial evidence); *State v. Mahaney,* 437 A.2d 613, 621 (Me.1981) (stating that the fact-finder is free to selectively accept or reject testimony based on witness credibility or the "internal cogency of the content").

### 2. Constitutionality of 17–A M.R.S. § 152–A(2)

[¶ 38] Second, contrary to Fortune's contention, the aggravated attempted murder statute, 17–A M.R.S. § 152–A, does not violate the Maine Constitution's affirmative command that all "penalties and punishments" be "proportioned to the offense" and does not violate the Constitution's prohibition against "cruel and unusual punishments" because it allows for the imposition of a sentence of life imprisonment as an alternative to a sentence of imprisonment for a term of years. Me. Const. art. I, § 9, cls. 2, 5; 17–A M.R.S. § 152–A(2). In this issue of first impression, we conclude that the Legislature had the authority to enact this statutory provision and that section 152–A's provision of the possibility of life imprisonment does not offend those clauses of the Maine Constitution.

[¶ 39] The test is whether a particular punishment is greatly disproportionate to the offense for which it is imposed, and if not, "whether it offends prevailing notions of decency, whether it shocks the conscience of the public, or our own respective or collective sense of fairness, or whether it is inhuman or barbarous." *State v. Ward*, 2011 ME 74, ¶ 18 & n. 4, 21 A.3d 1033. In applying this test, we consider that the culpability of the actor is the same in an attempted murder as it is in a completed murder, for which a court may also sentence the actor to life imprisonment. *See* 17–A M.R.S. §§ 201, 1251 (2010). The only difference between attempted murder and murder is the fortuitous circumstance that the victim did not die in an attempted murder.

[¶ 40] Thus, when an actor commits attempted murder, and that attempt is accompanied, in fact, by one or more of the aggravating factors stated in 17–A M.R.S. § 152–A(1), as occurred in this case, we cannot conclude, as a matter of law, that section 152–A(2) is unconstitutional. *See Ward*, 2011 ME 74, ¶¶ 16–18 & n. 4, 21 A.3d 1033; *State v. McKeen*, 2009 ME 87, ¶ 5, 977 A.2d 382 (stating that a facial challenge to the constitutionality of a statute is a question of law that is reviewed de novo, that a statute is presumed constitutional, and that the party challenging the statute bears the burden of establishing the statute's infirmity).

### 3. The Court's Sentencing Analysis for the Counts of Aggravated Attempted Murder

[¶ 41] Third, contrary to Fortune's contention, the court did not err in its application of the sentencing analysis, resulting in the imposition of concurrent life sentences for the two counts of aggravated attempted murder. More specifically, the court did not misapply principle when setting the basic sentence and did not abuse its discretion in setting the maximum sentence. *See* 17–A M.R.S. § 1252–C; *State v. Waterman*, 2010 ME 45, ¶¶ 42–44, 47–48, 995 A.2d 243 (reviewing the court's determination of the basic sentence de novo for a misapplication of law and the determination of the maximum sentence for an abuse of discretion). In *State v. Shortsleeves*, 580 A.2d 145, 149–51 (Me. 1990), we reviewed the factors to be evaluated in considering a life sentence for murder. Although the court did not, and did not need to, address its sentencing analysis precisely according to the factors outlined in *Shortsleeves*, the most significant elements of this crime, a planned and intended murder of as many as five individuals, extreme cruelty and brutality in the crimes committed, and permanent damage and disfigurement of two of the victims, leave no doubt that the sentencing factors addressed in *Shortsleeves* support the life sentences imposed here.

[¶ 42]  Additionally, given the imposition of life sentences, the court did not err in concluding that a split sentence is not available to Fortune and in not addressing the third step of the sentencing analysis.  *See* 17–A M.R.S. § 1252–C.  To the extent the court erroneously concluded that split sentencing is unavailable as a matter of law with respect to a conviction for aggravated attempted murder, that error was harmless.  M.R.Crim. P. 52(a).

4. Sentencing of the Other Felony Counts

[¶ 43]  Fourth, and finally, Fortune argues that the court erred when it failed to clearly articulate, on the record, each of the three steps of the sentencing analysis, 17–A M.R.S. § 1252–C, with respect to the remaining nine felony counts. When the court imposes long sentences on the most serious crimes of which a defendant has been convicted, and then imposes significantly shorter, concurrent sentences on numerous other felonies of which the defendant has been convicted in the same proceeding, the court need not engage in a mechanistic, individualized sentencing analysis for each of the lesser felonies of which a defendant has been convicted that arose out of the same criminal episode or related criminal episodes.  *See State v. Downs,* 2009 ME 3, ¶ 14, 962 A.2d 950. Regardless, the court implicitly analyzed those lesser felonies as part of its detailed sentencing analysis on the aggravated attempted murder counts.  *See State v. Dwyer,* 2009 ME 127, ¶¶ 34–41, 985 A.2d 469.  The fact that the court did not clearly articulate on the record the three-step sentencing analysis in determining the concurrent sentences imposed on the remaining nine felony counts was harmless, assuming it was error at all, as the record provides a rational basis for the court's sentencing decisions.  *See id.* ¶ 41.

The entry is:

Judgment affirmed.